UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

ESSEX INSURANCE COMPANY,

    Plaintiff,

-against-

BRUCE HELANDER, RON PARKER, PARKER
AND PARKER CONSULTING; and CHUBB GROUP OF
INSURANCE COMPANIES d/b/a VIGILANT
INSURANCE COMPANY

    Defendants.

-------------------------------------------------------------- X



08 CIV 6931

**COMPLAINT**



## COMPLAINT

Plaintiff ESSEX INSURANCE COMPANY ("Essex"), by and through its attorneys, CLAUSEN MILLER P.C., as and for its Complaint, herein alleges as follows:

1.    This is an action for declaratory judgment under the laws of the State of Pennsylvania.

### JURISDICTION and VENUE

2.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C.A. § 1332(a)(1), by reason of diversity of citizenship of the parties. The matter in controversy, exclusive of interest and costs, exceeds $75,000.00.

3.    Venue is proper in this district, pursuant to the provisions of 28 U.S.C.A. § 1391.

### THE PARTIES

4.    Plaintiff Essex is an excess and surplus lines carrier located in Glen Allen, Virginia and incorporated in the State of Delaware. It is a wholly-owned subsidiary of Markel Corporation, based in Richmond, Virginia, and does business in the State of New York.

5.    At all relevant times, Essex was authorized to issue policies of insurance within all States applicable to this matter.

6.    Defendant Bruce Helander is, upon information and belief, an individual domiciled in West Palm Beach, Florida, and is a designer, collagist, author, and art curator.

7.    Defendant Ron Parker is, upon information and belief, an individual domiciled in the State of Pennsylvania.

8.    Defendant Parker and Parker Consulting is, upon information and belief, a corporation organized and existing under the laws of the State of New York with its principal place of business in New York, New York, and does business under the name Parker & Parker, Inc.

9.    Upon information and belief, Ron Parker is the principal and owner of Parker and Parker Consulting, and is engaged in the business of, among other things, art consulting.

10.    Upon information and belief, defendant Chubb Group of Insurance Companies d/b/a Vigilant Insurance Company ("Vigilant") is incorporated in the State of New York and its principal place of business is in New Jersey.

## BACKGROUND

11.    Essex issued a Commercial General Liability policy, policy number 3CV1215, to Parker & Parker, Inc. of 90 Ninth Street, Milford, Pennsylvania 18337 (the "Policyholder"), effective from July 18, 2006 to July 18, 2007 (the "Policy"). The "Business Description" listed on the Policy is "Condo Complex/ Building Owner." A complete copy of the Policy is attached hereto as **Exhibit A**.

12.    Section II of the Policy's "Commercial General Liability Coverage Form" states that the Policy also provides coverage for executive officers and directors of an organization other than a partnership, joint venture, or limited liability company, but only with respect to their

duties as officers or directors. Therefore, to the extent that defendant Ron Parker was and is an executive officer or director of the Policyholder, Parker & Parker, Inc., and only with respect to any duties performed by Ron Parker as an officer or director of Parker & Parker Inc., Mr. Parker is also an insured under the Policy.

13.    The Policy was in full force and effect on February 27, 2007.

14.    Pursuant to the terms of the Policy, Essex agreed, subject to the limits, provisions, exclusions, and conditions thereto, to pay on behalf of the Policyholder, all sums which the Policyholder becomes obligated to pay as damages for "'personal and advertising injury' caused by an offense arising out of [the insured's] business." See **Exhibit A.**

15.    On February 27, 2007, defendant Ron Parker sent an allegedly false and malicious e-mail to defendant Bruce Helander, which was also copied to Bruce Helander's employer, Don Binns.

16.    The focus of Mr. Parker's e-mail is Mr. Helander's failure in the art community as an art salesman and in the commercial art business. In the e-mail, Mr. Parker accuses Mr. Helander of "poisoning" Mr. Helander's employer, Don Binns, towards Mr. Parker. Specifically, Mr. Parker calls Mr. Helander names, including a "lying, irresponsible bastard" and "bull shitter and lying evil person." He further accuses Mr. Helander of dishonest and illegal acts, as well as being a pot smoker, and unable to keep any of his jobs due to his irresponsibility and mismanagement. A copy of the e-mail is attached as Exhibit A to the Helander Complaint. A copy of the Helander Complaint is attached hereto as **Exhibit B.**

17.    The February 27, 2007 e-mail resulted in a lawsuit brought by Bruce Helander against Ron Parker and Parker and Parker Consulting, filed in the United States District Court for the Southern District of New York, styled *Bruce Helander v. Ron Parker and Parker and Parker Consulting* (the "Helander Lawsuit"). See **Exhibit B.**

18.     The plaintiff in the Helander Lawsuit, Bruce Helander, alleges that he suffered damages as a result of Mr. Parker's e-mail, which accused Mr. Helander of lying, irresponsibility, stealing money, and smoking pot, among other things.

19.     The Helander Lawsuit alleges "defamation/ slander/ libel," that the e-mail was defamatory, was written without any factual basis, was written maliciously and was deliberately copied to Mr. Binns.. The Helander Lawsuit alleges that Mr. Helander suffered termination of his employment, damage to his reputation, present and future financial losses, and physical and mental injuries as a result of the e-mail. See **Exhibit B.**

20.     The Policyholder has demanded that Essex provide defense and indemnification to it in the Helander Lawsuit under the terms of the Policy.

21.     In response to the Policyholder's demand for defense and indemnification in the Helander Lawsuit, Essex issued a disclaimer letter to the Policyholder on November 28, 2007. A copy of the November 28, 2007 disclaimer letter is attached hereto as **Exhibit C.**

22.     The disclaimer letter specifically advised the Policyholder that there was no coverage for the Helander Lawsuit because of the Policy's (1) coverage limitation for "condo complex/ building owner;" (2) Specified/ Designated Premises Project Limitation Endorsement, which limits coverage to the ownership, maintenance, or use of the building located at Route 6, White Mills, PA 18473; (3) exclusion for bodily injury, property damage, personal injury, and advertising injury, or any injury, loss or damages arising out of, caused by or contributed to from misrepresentation or negligent misrepresentation; (4) exclusion for bodily injury, property damage, personal injury, and advertising injury, or any injury, loss or damages arising out of, caused by, or contributed to from criminal acts, fraudulent, dishonest or malicious acts or omissions from any insured; and (5) exclusion for material published with knowledge of falsity.

23.    The Policyholder disputed Essex's disclaimer of coverage.  In response, Essex agreed to defend the Policyholder under a reservation of rights while it filed a declaratory judgment for a Court determination of coverage.  Again, Essex specifically advised that there were coverage questions because of numerous exclusions and provisions in the Policy.  A copy of Essex's reservation of rights letter is attached hereto as **Exhibit D.**

24.    There is no coverage for the Policyholder and Ron Parker for the Helander Lawsuit because the Policy's coverage is limited to operations involving the Policyholder's position as a Condo Complex/Building Owner and all of the allegations in the Helander Lawsuit arise out of an e-mail regarding Mr. Helander's incompetence as an arts professional.  See **Exhibit A.**

25.    Specifically, paragraph 1 of Combination General Endorsement ME-001 (01/06), states, in relevant part:

> THIS ENDORSEMENT AMENDS THE LIABILITY COVERAGE FORM OR COVERAGE PART (hereinafter referred to as Coverage Form), AND APPLIES TO THE ENTIRE POLICY.

> 1.    Coverage under this insurance is limited to operations described under "business description" and/or "classification" on the declarations page of the Policy.

> The "Business Description" on the Declarations Page is: Condo Complex/ Building Owner

> The Classification(s) are: Vacant Buildings - Not Factories; Apartment Buildings.

See **Exhibit A.**

26.    Therefore, there is no coverage under the Policy for the Helander Lawsuit because coverage is limited to operations of a condo complex/ building owner in Pennsylvania, and does not cover an allegedly malicious and defamatory e-mail regarding Mr. Helander's incompetence as an art professional.

27.    In addition, there is no coverage for the Helander Lawsuit under the Policy because the Policy's "Specified/ Designated Premises Project Limitation Endorsement" limits coverage to bodily injury, property damage, personal injury, or advertising injury arising out of the ownership, maintenance or use of the premises shown in the Schedule or Declarations, and the Declarations only lists one building: Route 6, White Mills, PA 18473.

28.    The Specified/ Designated Premises Project Limitation Endorsement specifically states, in relevant part:

> This insurance applies only to "bodily injury", "property damage", "personal injury", "advertising injury", and medical expenses arising out of:
>
> 1.    The ownership, maintenance or use of the premises shown in the Schedule (or Declarations); or
>
> 2.    The project shown in the Schedule (or Declarations).

The Declarations lists one building:

> Route 6, White Mills, PA 18473

See **Exhibit A.**

29.    The Helander Lawsuit arises out of an e-mail that is alleged to have been maliciously sent, slandering Mr. Helander, calling him a liar, incompetent, and a pot smoker, and implying that he is incompetent as an arts professional. The e-mail allegedly caused Mr. Helander to lose his job, and suffer financial loss and physical injuries. The Helander Lawsuit *does not* arise out of the ownership, maintenance, or use of the building at Route 6, White Mills, PA 18473.

30.    Moreover, there is no coverage under the Policy for the Helander Lawsuit under Combination General Endorsement ME-001 (01/06), which specifically excludes coverage for the following:

10.    This insurance does not apply to "bodily injury", "property damage", "personal injury", "advertising injury", or any injury, loss or damages, including consequential injury, loss or damages, arising out of, caused by or contributed to:

i.    from...... misrepresentation or negligent misrepresentation.....,

m.    from criminal acts, fraudulent, dishonest or malicious acts or omissions from any insured....

See **Exhibit A.**

31.    The Helander Lawsuit arises out of an allegedly malicious e-mail sent by Mr. Parker to Mr. Helander in which Mr. Parker allegedly misrepresents Mr. Helander. Therefore, there is no coverage under the Policy because the Policy specifically excludes losses or damages arising out of misrepresentation, and/or fraudulent or malicious acts.

32.    Coverage Section A of the Policy only provides coverage for "bodily injury" or "property damage" caused by an "occurrence." "Occurrence is defined in the Policy as follows:

**SECTION V - DEFINITIONS**

**13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

See **Exhibit A.**

33.    Clearly, the Policy defines an occurrence as an "accident." Because the Helander Lawsuit involves an allegedly false and malicious e-mail intentionally sent from Mr. Parker to Mr. Helander and Mr. Binns, there is no coverage under Coverage Section A of the Policy because no accident occurred.

34.    There is also no coverage for the Policyholder or Mr. Parker for the Helander Lawsuit because all of the claims in the lawsuit are only potentially covered under Coverage Section B of the Policy and Exclusion 2b in Coverage Section B states as follows:

2.    Exclusions.

243003.1

This insurance does not apply to:

b.     Material Published with knowledge of
       falsity.

See **Exhibit A.**

35.    Since the entire Helander Lawsuit arises out of an allegedly false e-mail that was written maliciously, causing Mr. Helander financial and physical injuries, there is no coverage for the Helander Lawsuit because of the Policy's exclusion for material published with knowledge of falsity.

36.    Accordingly, for all of the above reasons, there is no coverage under the Policy for the Policyholder or Mr. Parker for any of the allegations in the Helander Lawsuit.

37.    Even if there was coverage under the Policy, which there is not, it would be limited for the Policyholder and Mr. Parker in the Helander Lawsuit under the Policy's Other Insurance provision. See **Exhibit A.**

38.    The Policy's Other Insurance Provision states, in relevant part:

4.     **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

a.     **Primary Insurance**

       This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

b.     **Excess Insurance**

       This insurance is excess over:

                              ***

(2)    Any other primary insurance available to you covering liability for damages arising out of the premises or

operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverage **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's right against all those other insurers.

\*\*\*

See **Exhibit A.**

39.     Under the terms of this provision, coverage provided under this Policy is excess to any other insurance available to the Policyholder that provides liability coverage for damages arising out of the premises or operations for which the Policyholder has been named an additional insured.

40.     Essex avers that it has no duty to defend the claims against the Policyholder and Mr. Parker in the Helander Lawsuit.

41.     No other terms or provisions in the Policy require Essex to defend or indemnify the Policyholder or Mr. Parker in the Helander Lawsuit. See **Exhibit A.**

42.     Moreover, Essex avers that defendant Vigilant provides coverage for defendant Ron Parker for the allegations in the Helander Lawsuit.

43.     Vigilant issued a personal liability coverage policy, policy number 1111493301, effective from October 10, 2007, that was in full force and effect on February 27, 2007 (the "Vigilant Policy"). If Essex was obligated to provide coverage for the allegations in the Helander Lawsuit, which it is not, its liability is excess to the Vigilant Policy, which also provides coverage for the allegations in the Helander Lawsuit.

44.    An actual controversy exists between Essex herein and the Policyholder, Mr. Parker, and Vigilant in the Helander Lawsuit as to the obligations, if any, of Essex to defend the Policyholder and Mr. Helander.

45.    Plaintiff has no adequate remedy at law.  Plaintiff requires a declaration of its rights and obligations by this Court in a declaratory judgment.

46.    In addition, there is a reasonable fee dispute between plaintiff and counsel for the Policyholder regarding what constitutes a reasonable attorney's fee for defending this matter. The Policyholder's counsel has demanded a fee of $350/hr.  Plaintiff avers that a reasonable and typical defense fee in this matter would be $200/hr.  The Policyholder's counsel advised plaintiff that deadlines in the underlying Helander Lawsuit needed to be met and that plaintiff's negotiations regarding fees were jeopardizing the defense of the Helander Lawsuit.  Therefore, in order to protect the Policyholder's interest, plaintiff agreed in good faith to pay the fee requested by the Policyholder's counsel, subject to the instant declaratory judgment action, wherein plaintiff requests that the Court address the fee dispute and declare that Essex is only obligated to pay $200/hr. for the Policyholder's counsel's services with the understanding that Essex is requesting a declaration here of no coverage and a declaration that it is not obligated to pay for the Policyholder's defense in the Helander Lawsuit at all.

WHEREFORE, Essex demands that the Court issue a declaratory judgment as follows:

A.    That Essex is not obligated under the Policy to defend neither the Policyholder nor Mr. Parker in the Helander Lawsuit, or pay any judgments which may be rendered against them therein;

B.    That the Court's declarations in this action shall be a full and complete defense for Essex in any action brought against Essex by the Policyholder or Mr. Parker with regards to the Helander Complaint;

C.    That even if coverage existed under the Essex Policy, such coverage is excess to the coverage provided by Vigilant Insurance Company;

D.    That Essex is awarded the costs and disbursements of this action, including attorneys' fees;

E.    That the Court declare that the attorney's fee requested by the Policyholder's counsel is unreasonable; and

F.    That Essex have such other, different and further relief, decree, or judgment as the Court may deem just and proper.

Dated: July 23, 2008

Respectfully submitted,

CLAUSEN MILLER P.C.

By:    _____

Steven Fried (SJF3637)
Attorneys for Essex Insurance Company
One Chase Manhattan Plaza
New York, New York 10005
(212) 805-3900



G0213190



## ESSEX INSURANCE COMPANY

**MARKEL**

The insurer which has issued
this insurance is not licensed
by the Pennsylvania Insurance
Dept. and is subject to limited
regulation. This insurance is
NOT covered by the Pennsylvania
Property and Casualty Insurance
Guaranty Association. Placed
by W.N.Tuscano Agency, Inc.,
Highland Ave., Greensburg,
PA 15601.

## COMMON POLICY DECLARATIONS

Previous Policy No.: NEW

Policy No.: 3 CV1215

POLICY PERIOD: From __07/18/2006__ To __07/18/2007__  Term: __1 Year__
at 12:01 A.M. Standard Time at your mailing address shown below.

Named Insured:  PARKER & PARKER INC

Mailing Address:  90 NINTH STREET  MILFORD PA 18337
                 Street Number       City         State         Zip Code

BUSINESS DESCRIPTION: CONDO COMPLEX/BLDG OWNER

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE
AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS *FOR WHICH A PREMIUM IS INDICATED.*
THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT    .

| | PREMIUM |
|---|---|
| Commercial Crime Coverage Part............................................................. $ | _____ |
| Commercial General Liability Coverage Part............................. $ | 1,000.00 |
| Commercial Inland Marine Coverage Part................................. $ | _____ |
| Commercial Ocean Marine Coverage Part................................. $ | _____ |
| Commercial Professional Liability Coverage Part................. $ | _____ |
| Commercial Property Coverage Part......................................... $ | _____ |
| TRIA ......................................... $ | NOT COVERED |

|  | | Premium Total $ | 1,000.00 |
|---|---|---|---|
| SURPLUS LINES TAX: | 30.00 | | |
| STAMP FEE: | 15.00 | | |
| Other Charges  PLC FEE | 75.00 | ......................... $ | 120.00 |

Audit Period:  Annual unless otherwise stated:           TOTAL $  1,120.00
              PREMIUMS ARE MINIMUM & DEPOSIT AS APPLIES.
FORMS AND ENDORSEMENTS:

** SEE IL1201 A - LIST OF APPLICABLE FORMS AND ENDORSEMENTS

Inspection Ordered: ☐ Yes ☐ No ☐ Not Required  Date:        U/W Name: Marcia Novak    Protection Class:
Photograph Ordered: ☐ Yes ☐ No ☐ Not Required

Agency Name/Address: W. N. TUSCANO AGENCY, INC., GREENSBURG  PA 15601
Agency Number: 102-350

Countersigned: __07/27/2006__          By _____
               Date                              Authorized Representative
011-1058(11/99)

TN: 1490-3CV1215-06                    HOME OFFICE



**ESSEX**
**INSURANCE**
**MARKEL COMPANY**

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

These Supplemental Declarations form a part of policy number ___3CV1215___

### LIMITS OF INSURANCE

| | |
|---|---|
| General Aggregate Limit (other than Products/Completed Operations) ........ | $ 1,000,000 |
| Products/Completed Operations Aggregate Limit ................................ | $ 1,000,000 |
| Personal and Advertising Injury Limit ............................................ | $ 1,000,000 |
| Each Occurrence Limit .............................................................. | $ 1,000,000 |
| Fire Damage Limit .................................................................... | $ 50,000  Any One Fire |
| Medical Expense Limit .............................................................. | $ EXCLUDED  Any One Person |

### BUSINESS DESCRIPTION AND LOCATION OF PREMISES COVERED BY THIS POLICY

Form of business: CONDO COMPLEX/BLDG OWNER

☐ Individual   ☐ Joint Venture   ☐ Partnership   ☒ Organization (other than Partnership or Joint Venture)

Location of all premises you own, rent or occupy:
LOC#: 1   ROUTE 6  PENNE HILLS PA 18473

### PREMIUM

| | Description of Hazards/ Insured Classification(s) | Code No. | *Premium Basis | Rate Pr/Co | Rate All Other | Advance Premium Pr/Co | Advance Premium All Other |
|---|---|---|---|---|---|---|---|
| LOC#: 1 | VACANT BUILDINGS - NOT FACTORIES (FOR PROFIT) (EXCLUDING PRODUCTS AND/OR COMPLETED OPERATIONS) | 68606 | U | 6 | 1 $ | $ | 500 MP |
| LOC#: 1 | APARTMENT BUILDINGS (INCLUDING PRODUCTS AND/OR COMPLETED OPERATIONS) | 60010 | U | 2 | 110 | | 500 MP |

| | |
|---|---|
| *(a) Area,  (c) Total Cost,  (m) Admission,  (p) Payroll,  (s) Gross Sales,  (u) Units,  (o) Other | TOTAL ADVANCE PREMIUM $ 1000.00 |

### FORMS AND ENDORSEMENTS (other than applicable forms and endorsements shown elsewhere in the policy)

Forms and endorsements applying to this Coverage Part and made part of this policy at time of issue:

SEE IL1201A

THIS SUPPLEMENTAL DECLARATIONS AND THE COMMERCIAL LIABILITY DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS COMPLETE THE ABOVE NUMBERED POLICY.

CM-4000/1 (8-94)                                    HOME OFFICE

GN213350

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## POLICY CHANGES

POLICY CHANGE
NUMBER  A



Authorized Representative Signature

IL 12 01 11 85          Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983

HOME OFFICE

G8213190

POLICY NUMBER:                                    COMMERCIAL GENERAL LIABILITY
                                                         CG 21 35 10 93

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - COVERAGE C - MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

Description and Location of Premises or Classification:

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule, coverage C. MEDICAL PAYMENTS (Section I) does not apply and none of the references to it in the Coverage Part apply.

The following is added to SUPPLEMENTARY PAYMENTS (Section I):

8. Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.

CG 21 35 10 93          Copyright, Insurance Services Office, Inc., 1992                     □



# ESSEX INSURANCE COMPANY

## DEACTIBLE ENDORSEMENT

*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3 CV1215 | 07/18/2006 | PARKER & PARKER INC |

**THIS ENDORSEMENT CHANGES THE POLICY.**

### SCHEDULE

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| If provided by this policy: Bodily Injury, Property Damage, Professional or Personal and Advertising Injury Liability | $ 500 | Per Claim |
| Exception: | | |
| _____ | $ | Per Claim |

☐ If this box is so marked, the basis of deductible is amended to apply "on a per item per claim" property damage deductible basis.

1. Our obligation under Bodily Injury Liability, Property Damage Liability, Professional Liability, Personal and/or Advertising Injury Liability, or any other coverage under this policy, to pay damages in excess of any deductible amounts stated in the Schedule above. The deductible amount stated above shall be applicable to each claim and will include loss payments, adjustment, investigative and legal fees and costs, whether or not loss payment is involved.

2. The deductible amount stated above applies under the coverages respectively to all damages sustained by one person, or organization, as the result of any one occurrence.

3. The terms of this insurance, including those with respect to:
   (a) Our right and duty to defend any "suits" seeking those damages; and
   (b) Your duties in the event of an "occurrence," claim, or suit apply irrespective of the application of the deductible amount.

4. We may pay any part or all of the deductible amount to effect settlement of any claim or suit and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

_____ / _____
AUTHORIZED REPRESENTATIVE        DATE

M/E-048 (4/96)

GS213190



# ESSEX INSURANCE COMPANY

## MINIMUM EARNED PREMIUM ENDORSEMENT

* Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CV1215 | 07/18/06 | PARKER & PARKER INC |

### THIS ENDORSEMENT CHANGES THE POLICY.

If this insurance policy is canceled at your request, there will be a Minimum Earned Premium retained by us of $_____ or  25.00 % (per cent) of the premium, whichever is the greater.  Cancellation for nonpayment of premium is considered a request by the first Named Insured for cancellation of this policy.

_____ /
AUTHORIZED REPRESENTATIVE       DATE

M/E-143 (4/99)

HOME OFFICE

GEX13190



# ESSEX INSURANCE COMPANY

## SPECIFIED /DESIGNATED PREMISES/PROJECT LIMITATION

*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CV1215 | 07/18/2006 | PARKER & PARKER INC |

THIS ENDORSEMENT CHANGES THE POLICY.

**Schedule**

Premises:

Project:

(Complete above if information different than that shown in the Declarations)

This insurance applies only to "bodily injury", "property damage", "personal injury", "advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule (or Declarations); or

2. The project shown in the Schedule (or Declarations).

_Robert T_____  07/27/2006
AUTHORIZED REPRESENTATIVE        DATE

M/E-217 (11/99)

HOME OFFICE

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - LEAD CONTAMINATION

This endorsement modifies coverage found under the following coverage part:

3 CV1215          07/18/06    PARKER & PARKER INC
COMMERCIAL GENERAL LIABILITY COVERAGE PART.
Coverage A, Bodily Injury and Property Damage Liability;
Coverage B, Personal and Advertising Injury Liability; and
Coverage C, Medical Payments

This endorsement modifies the above Coverages to exclude occurrences at the insured premises which result in:

a.    "Bodily Injury" arising out of the ingestion, inhalation or absorption of lead in any form;

b.    "Property Damage" arising from any form of lead;

c.    "Personal Injury" arising from any form of lead;

d.    "Advertising Injury" arising from any form of lead;

e.    "Medical Payments" arising from any form of lead;

f.    Any loss, cost or expense arising out of any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way responding to, or assessing the effects of lead.

g.    Any loss, cost, or expense arising out of any claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

UD-93



# ESSEX INSURANCE COMPANY

## COMBINATION GENERAL ENDORSEMENT

*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| | | |

THIS ENDORSEMENT AMENDS THE LIABILITY COVERAGE FORM
OR COVERAGE PART (hereinafter referred to as Coverage Form), AND APPLIES TO THE ENTIRE POLICY.

1. Coverage under this insurance is limited to operations described under 'business description' and/or 'classification' on the declarations' pages of policy.

2. This insurance does not apply to Part 4 of Section II in the Coverage Form – Who is an insured.

3. Supplementary Payments-Coverages A & B - in the Coverage Form is amended to read with respect to 1. last paragraph: These payments will not reduce the limits of insurance, except with respect to attorneys' fees incurred by us in defense of an indemnitee of the Insured, and this applies throughout Supplementary Payments–Coverages A & B- section of this policy.

4. Insured contract to which this insurance applies means any written (A) - Lease of premises excluding indemnification to another for damage by fire to premises while rented to you or temporarily occupied by you and/or (B) - Easement agreement except in connection with construction or demolition operations on or adjacent to a railroad, and/or (C) - Indemnification of a municipality as required by ordinance, except in connection with work for the municipality, and/or (D) - Sidetrack agreement or any easement or license agreement in connection with vehicle or pedestrian private railroad crossing at grade, and/or (E) - elevator maintenance agreement.

5. This insurance does not apply to claims arising out of breach of contract, whether written or oral, express or implied, implied-in-law, or implied - in fact contract.

6. Wording in Coverage Form, 2. Exclusions, Section I- Coverages, e. Employer's Liability, is replaced by the following and applies throughout this policy:
   This insurance does not apply to liability for "Bodily Injury" to:
   (A) an "employee" of any insured arising out of and in the course of employment or while performing duties related to the conduct of an insured's business; or (B) any injury or damage to any other person including but not limited to spouse, child, parent, brother, sister or relative of the "employee" as a consequence of (A). This exclusion applies whether an Insured may be liable as an employer or in any other capacity and applies to any obligation to share damages with or repay someone else who must pay damages because of the injury, as well as liability assumed under any "Insured Contract." Wherever the word "employee" appears above, it shall also mean any member, associate, co-employee, leased worker, temporary worker, union worker, volunteer, or any person or persons loaned to or volunteering services to you.

7. Fines, penalties, and punitive or exemplary damages are not covered under this policy nor are any expenses nor any obligation to share such damages or repay another. However, this does not apply to Punitive Damages from Wrongful Death brought under Alabama's Wrongful Death Statute.

8. Professional Liability, Errors, Omission, Negligent Acts, Malpractice and/or acts of any type including rendering or failure to render any type professional service is not covered under this policy, unless such coverage is specifically endorsed onto the policy.

9. Wording in Coverage Form, 2. Exclusions, Section I - Coverages, c. Liquor Liability, last paragraph, is deleted. Item (4) is added as follows: (4) any act or omission by any Insured, any employee of any Insured, patrons, members, associates, volunteers or any other persons respects providing or failing to provide transportation, detaining or failing to detain any person, or any act of assuming or not assuming

ME-001 (01/06)                                                                 Page 1 of 3

responsibility for the · being, supervision or care of any person jedly under or suspected to be under the influence of alcohol.

10. This insurance does not apply to 'bodily injury', 'property damage', 'personal injury, 'advertising injury' or any injury, loss, or damages, including consequential injury, loss or damage, arising out of, caused by or contributed to:

    a.   by ownership, non-ownership, maintenance, use, or entrustment to others of any 'auto', aircraft, watercraft, snowmobile, all terrain vehicle (ATV), or motorcycle.  Use includes operation and 'loading' and 'unloading'; or

    b.   from Employment- Related Practices, regardless of allegations, including but not limited to:

        (1) refusal to employ, or termination of employment; or
        (2) discrimination, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment in any form, humiliation, or other employment-related practices, policies, acts or omissions; or

    c.   as a result of discrimination of any kind, actual or alleged; or

    d.   as a result of and/or arising out of assault and/or battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any insured, insured's employees, patrons or any other person(s); or

    e.   as a result of alleged negligence or other wrongdoing in the hiring, training, placement, supervision, or monitoring of others by insured; or

    f.   as a result of any person practicing for and/or participating in any contest, event or function of a sporting or athletic nature; or

    g.   by any animal, regardless whether owned by you, in your care, or on your premises; or

    h.   by any named insured covered by this policy initiating causes of action or allegations against any other insured covered by this policy; or

    i.   from intellectual property, proprietary property rights, patent, trademark and/or copyright infringement,  misappropriation of trade secret and/or  practice, piracy, fraudulent  concealment, unjust enrichment, misrepresentation or negligent  misrepresentation; and/or  deceptive, false, fraudulent, misleading, unfair, unlawful or untrue business act  or practice with respect to advertising; or

    j.   from any action or omission that violates or is alleged to violate the Telephone Consumer Protection Act (TCPA), the CAN-SPAM Act of 2003, including any amendment of or addition to such laws, or any analogous local, state or federal statute, ordinance or regulation, other than the foregoing, that prohibits or limits sending, transmitting, communicating, solicitation, or distribution of material or information using e-mails, telephone, telephone facsimile machine, computer or other electronic device; or

    k.   resulting from water or moisture, and/or due to discharge, leakage, seepage, backup or overflow from sewers, mains, drains, pipes, plumbing, heating, refrigeration, air conditioning, standpipes, appliances, sprinkler systems, or ditches, streams, levees, or rain or snow admitted to the building interior; or

    l.   from Internet exposures, world-wide web, cyber system(s), computer hardware or software, electronic data, e-mail, unauthorized use, loss/misuse of data, or from loss of, alteration of, failure, error, negligence, malfunction, inadequacy of, damage to or a reduction in functionality, availability or operation of a computer system, network(s), program(s),  software, data, information repository, microchip(s), integrated circuit or similar device in computer equipment or non-computer equipment, regardless of cause, and/or resultant loss of income, whether property of the insured or any other; or

    m.   from criminal acts, fraudulent, dishonest or malicious acts or omissions from any insured, any employee of any insured or anyone for whom you may be held liable; or

ME-001 (01/06)                                                             **Page 2 of 3**

11. If this policy includes a Lessors Risk Only (LRO) classification, it is written and priced as such only on condition that your lease or agreement with tenant(s) requires (commercial) tenant(s) carry Commercial General Liability coverage with limits at least equal to the limits of this policy, names you as an additional insured on their policy, and you require and secure a certificate of insurance confirming same. Parking areas or other land of premises leased to tenant(s) must also be covered by their insurance, or separately submitted and priced hereunder. Failure to comply with this condition does not void your coverage, however, limits of liability hereunder will be reduced and apply as a 'sublimit' of liability, being a Combined Single Limit, $50,000 each occurrence and in the Aggregate,including loss adjustment expenses and defense. The sublimit would be the most payable for all damages arising out of any one occurrence, and the most payable for all claims under this policy, including investigation and defense. If such sublimits were tendered or exhausted, we would not defend or continue to defend in any suit.

12. Where there is no coverage under this policy, there is no duty to defend.

# ESSEX INSURANCE COMPANY

## ADDITIONAL CONDITIONS ENDORSEMENT

*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| | | |

THIS ENDORSEMENT AMENDS THE LIABILITY COVERAGE FORM OR COVERAGE PART (hereinafter referred to as Coverage Form), AND APPLIES TO THE ENTIRE POLICY.

This insurance does not apply to 'bodily injury', 'property damage', 'personal injury, 'advertising injury' or any injury, loss, or damages, including consequential injury, loss or damage, arising out of, caused by or contributed to or as a result of:

1.

    (A) 'movement of land or earth' regardless whether emanating from, aggravated by, or attributable to any operations performed by or on behalf of any insured, and regardless whether first manifestation of same occurs during the policy period or prior or subsequent thereto. 'Movement of land or earth' includes, but is not limited to, instability, subsidence, settling, sinking, slipping, falling away, caving in, shifting, eroding, rising, tilting, bulging, cracking, mud flow, mudslide, earthquake, shrinking or expansion of ground, slabs, footings, foundations, walls, roofs, floors, ceilings or any other real property or part thereof, or any other movements of land or earth;  or

    (B) pollution, contamination, contaminants, irritants, including but not limited to injuries alleged as a result of actual, alleged or threatened exposure to and/or absorption of and/or inhalation of, and/or ingestion of, contact with, existence of, presence of,  and environmental impairment, including but not limited to damage to natural habitats and species.  Expenses and any obligation to share damages with or repay anyone else who must pay damages from same in conjunction with occurrences or actions arising or alleged to have arisen out of same are not covered. All liability and expense arising out of or related to any form of actual or alleged pollution, and/or contamination, and/or environmental impairment, whether intentional or otherwise, and whether or not any resulting injury, damage, devaluation, cost or expense is expected by any Insured or any other person or entity, is excluded throughout this policy.  This includes but is not limited to devaluation of property, or for taking, use or acquisition or interference with the rights of others in or on property or air space.

    Any loss, cost, expense, fines and/or penalties arising out of any

        (a) request, demand, order, statutory or regulatory requirement, governmental authority or directive or that of any private party or citizen action that any Insured, or others, test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess same the effects of pollutants, and/or contaminants and/or irritants, and/or environmental impairment; and/or

        (b) litigation or administrative procedure in which any Insured or others may be involved as a party as a result of actual, alleged, or threatened, discharge, dispersal, seepage, migration, release, escape, or placement of pollutants and/or contaminants and/or environmental impairments into or upon land, premises, buildings, the atmosphere, any water course, body of water, aquifer, or ground water, whether sudden, accidental, deliberate, or gradual in nature or not, and regardless of when,

are not covered.

Pollutants and/or contaminants and/or irritants mean any solid, liquid, gaseous, thermal, acoustic, electrical, or magnetic irritant, contaminant, or pollutant, including but not limited to smoke, fumes, heat, soot, vapor, emissions, fibers, radiation, acids, alkalis, fuels, petroleums, lubricants, operating fluids, pesticides, fertilizers, paints, dust, toxic dust, spores, chemicals and waste. Waste includes but is not limited to medical waste and all other materials to be disposed of, recycled, stored, reconditioned or reclaimed.

This wording supersedes and replaces all other wording on 'Pollution' in the Coverage Form attached to this policy; or

(C) asbestos, lead, silica dust, dust and/or toxic dust, fungi, bacteria, organic pathogens, bio-organic growth and/or systemic chemical poisoning

    (a) whether arising out of actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, presence of, discharge, dispersal, seepage, migration, infiltration, infestation, release, escape, growth, production or reproduction of or toxic substances from asbestos, lead, silica dust, dust and/or toxic dust, fungi, bacteria, organic pathogens, bio-organic growth and/or systemic chemical poisoning. This applies regardless of source, including but not limited to, from any goods, products or structures containing same, existence of same in any form, in occupancy or construction, manufacture, sale, transportation, handling, storage, disposal or removal of same; and

    (b) regardless of supervision, instructions, recommendations, requests, warnings or advice given or which should have been given, as well as any costs, including but not limited to abatement, mitigation, removal, containment, treatment, detoxification, neutralization, or disposal of same, or in any way respond to assess the effects of same.

Coverage does not apply to any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way, responding to, or assessing the effects by any insured or by any other person or entity.

"Fungi" hereunder means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi. However, this exclusion does not apply to any "fungi" or bacteria that are on, or are contained in, a good or product intended for bodily consumption.

(D) If contractors or subcontractors are used, it is a condition of coverage that you use only those that are insured, and carry at a minimum Commercial General Liability coverage with limits at least equal to the limits of this policy, name you as an additional insured on their policy, and carry workers compensation insurance, and you require and secure certificates of insurance confirming same. Failure to comply with this condition does not void your coverage, however, limits of liability hereunder will be reduced and apply as a 'sublimit' of liability, being a Combined Single Limit, $50,000 each occurrence and in the Aggregate, including loss adjustment expenses and defense.

The sublimit would be the most payable for all damages arising out of any one occurrence, and the most payable for all claims under this policy, including investigation and defense. If such sublimits were tendered or exhausted, we would not defend or continue to defend in any suit.

Further, there is no coverage under this policy for 'bodily injury', 'personal injury' or 'property damage' sustained by any contractor, self-employed contractor, and/or subcontractor, or any employee, leased worker, temporary worker or volunteer help of same.

# ESSEX INSURANCE COMPANY

## PENNSYLVANIA ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY.**

*\* The following spaces \*need not be completed if this endorsement and the policy have the same inception date.*

| \*ATTACHED TO AND FORMING PART OF POLICY NO. | \*EFFECTIVE DATE OF ENDORSEMENT | \*ISSUED TO |
|---|---|---|
| | | |

### AMENDATORY ENDORSEMENT
### REPLACING ITEM 1(B) of M/E-002 (01/05)

**Exclusion - Absolute Pollution:**

It is agreed this policy does not cover any claims arising out of:

1.   "Bodily Injury" or "Property Damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

   (a)   At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

   (b)   At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste.

   (c)   Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

   (d)   At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations;

      (1)   if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

      (2)   if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

   Subparagraphs (a) and (d) (1) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

   As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

2.   Any loss, cost or expense arising out of any:

   (a)   Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of pollutants; or

   (b)   Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.   Waste includes materials to be recycled, reconditioned or reclaimed.

_____   _____
**AUTHORIZED REPRESENTATIVE**                **DATE**

M/E-002-PA (01/05)

# **ESSEX INSURANCE COMPANY**

## **HABITATIONAL COMBINATION ENDORSEMENT**

*\* Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| | | |

**THIS ENDORSEMENT CHANGES THE POLICY.**

The coverage under this policy does not apply to bodily injury, property damage, personal injury, advertising injury, or any injury, loss or damage arising :

1.  out of any action(s), or allegation(s), of violation of building code(s), ordinance(s), or statute(s);

2.  out of any type eviction action(s), or allegation(s) of discrimination;

3.  if on the insured premises out of swimming pool(s), unless specifically classified and shown on declarations or schedule and
    (a) having Red Cross or similarly qualified/certified life-guard(s) on duty at all times during hours open for use, or
    (b) if no life-guard, 'rules signs' must be posted and clearly visible to include stating "No Life-Guard on Duty - Swim at Own Risk";
    (c) "Rules signs" must also include: "No one under age 14 permitted without adult supervision", "No alcoholic beverages permitted", "No glass containers permitted", "No horse play permitted", as well as all other rules of management;
    (d) life-saving equipment must be maintained poolside at all times including but not limited to floatation ring(s), shepards' hook, flotation ropes must be installed between "deep and shallow" end of pool, and depth markings must be clearly marked;
    (e) fenced, with self-closing, self-locking gates.

M/E-091 (01/05)



# ESSEX INSURANCE COMPANY

## VACANT BUILDING ENDORSEMENT

\* Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
|  |  |  |

### THIS ENDORSEMENT CHANGES THE POLICY.

This policy does not provide insurance coverage or defense for claims, loss, costs, and/or expenses for claims arising from any renovation, demolition, or construction operations or any owner or tenant occupancy at any building, or part of a building, classified on this policy as vacant.

Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

*In Witness Whereof,* the Company has caused this endorsement to be signed by a duly authorized representative of the Company.

_____
AUTHORIZED REPRESENTATIVE

M/E-267 (01/05)

COMMERCIAL GENERAL LIABILITY
CG 00 01 10 01

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured. Other words and phrases that appear in quotation marks have special meaning. Refer to Section V –Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1.  Insuring Agreement**

   **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

      **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

     No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

   **b.**  This insurance applies to "bodily injury" and "property damage" only if:

      **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

      **(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   **c.**  "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   **d.**  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or

ternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or

threatened discha_ _, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

    (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

    (ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

    (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

    (i) Any insured; or

    (ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's

    behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

    (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

    (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

    (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or

subcontractor working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

   **(2)** Any loss, cost or expense arising out of any:

      **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

      **(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

      However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g.** **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

   **(1)** A watercraft while ashore on premises you own or rent;

   **(2)** A watercraft you do not own that is:

      **(a)** Less than 26 feet long; and

      **(b)** Not being used to carry persons or property for a charge;

   **(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

   **(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

   **(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f. (2) or f. (3) of the definition of "mobile equipment".

**h.** **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

   **(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

   **(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i.** **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j.** **Damage To Property**

"Property damage" to:

   **(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

   **(2)** Premises you sell, give away or abandon, if the "property damage"

arises out of any μ   of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)** , **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.  Damage To Your Product**
"Property damage" to "your product" arising out of it or any part of it.

**l.  Damage To Your Work**
"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.  Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or

da.   .ous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.  Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";
if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o.  Personal And Advertising Injury**
"Bodily injury" arising out of "personal and advertising injury".

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.  Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**
This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**
"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**
"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**
"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**
"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**
"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**
"Personal and advertising injury" arising out of a breach of contract, except an

implied       tract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**
"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**
"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**
"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web-sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**
"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**
"Personal and advertising injury" arising out of the unauthorized use of another's

                    © ISO Properties, Inc. , 2000

name or product in you. mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**
"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**
Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

**1. Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray

and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**
We will not pay expenses for "bodily injury":

a. **Any Insured**
To any insured, except "volunteer workers".

b. **Hired Person**
To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury On Normally Occupied Premises**
To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers Compensation And Similar Laws**
To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletics Activities**
To a person injured while taking part in athletics.

f. **Products-Completed Operations Hazard**
Included within the "products-completed operations hazard".

g. **Coverage A Exclusions**
Excluded under Coverage **A.**

h. **War**
Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to re___se attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.** **(2)** of Section I – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the

conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:
   **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:
     **(1)** "Bodily injury" or "personal and advertising injury":
      **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;
      **(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer

worker" as a consequence of Paragraph (1) (a) above;
     **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1) (a) or (b) above; or
     **(d)** Arising out of his or her providing or failing to provide professional health care services.
    **(2)** "Property damage" to property:
     **(a)** Owned, occupied or used by,
     **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture) , or any member (if you are a limited liability company) .

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:
    **(1)** With respect to liability arising out of the maintenance or use of that property; and
    **(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:
   **a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

   No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

   The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

1. **Bankruptcy**
   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**
   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "su_ is brought against any insured, you must:

    **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

    **(2)** Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

    **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

    **(2)** Authorize us to obtain records and other information;

    **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3.** **Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4.** **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover

under Cover_ _ s A or B of this Coverage Part, our obligations are limited as follows:

**a.** **Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in `c.` below.

**b.** **Excess Insurance**

This insurance is excess over:

    **(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

        **(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

        **(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

        **(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

        **(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

    **(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

    **(1)** The total amount that all such other insurance would pay for the loss in

the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c.    Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5.    Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6.    Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7.    Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8.    Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9.    When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

a. The United States of Ai. .ica (including its territories and possessions) , Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in a. above;

(2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises.

However  .at portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including

those listed in (2) above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

    **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    **b.** While it is in or on an aircraft, watercraft or "auto"; or

    **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

    but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **b.** Vehicles maintained for use solely on or next to premises you own or rent;

    **c.** Vehicles that travel on crawler treads;

    **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        **(1)** Power cranes, shovels, loaders, diggers or drills; or

        **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

    **e.** Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        **(2)** Cherry pickers and similar devices

used to raise or lower workers;

    **f.** Vehicles not described in a., b. , c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

    However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

        **(1)** Equipment designed primarily for:
            **(a)** Snow removal;

            **(b)** Road maintenance, but not construction or resurfacing; or

            **(c)** Street cleaning;

        **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

        **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.** The use of another's advertising idea in your "advertisement"; or

    **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including

smoke, vapor, soot, fumes, ὰ ̣ ̣ s, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physica. ury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

           (c) A person or o.___nization whose business or assets you have acquired; and

      (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

  **b.** Includes

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      (2) The providing of or failure to provide warnings or instructions.

  **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

  **a.** Means:

      (1) Work or operations performed by you or on your behalf; and

      (2) Materials, parts or equipment furnished in connection with such work or operations.

  **b.** Includes

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

      (2) The providing of or failure to provide warnings or instructions.

G8213198



## ESSEX INSURANCE COMPANY

**The insurer which has issued this insurance is not licensed by the Pennsylvania Insurance Dept. and is subject to limited regulation. This insurance is NOT covered by the Pennsylvania Property and Casualty Insurance Guaranty Association. Placed by R.N.Tuscano Agency, Inc., Highland Ave., Greensburg, PA 15601.**

# COMMON POLICY DECLARATIONS

Previous Policy No.: NEW

Policy No.: 3 CV1215

POLICY PERIOD: From 07/18/2006 ___ To ___ 07/18/2007 ___ Term: 1 Year ___
at 12:01 A.M. Standard Time at your mailing address shown below.

Named Insured: PARKER & PARKER INC

Mailing Address: 90 NINTH STREET MILFORD PA 18337

| Street Number | City | State | Zip Code |

BUSINESS DESCRIPTION: CONDO COMPLEX/BLDG OWNER

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS *FOR WHICH A PREMIUM IS INDICATED.*
THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT

| | PREMIUM |
|---|---|
| Commercial Crime Coverage Part | $ |
| Commercial General Liability Coverage Part | $ 1,000.00 |
| Commercial Inland Marine Coverage Part | $ |
| Commercial Ocean Marine Coverage Part | $ |
| Commercial Professional Liability Coverage Part | $ |
| Commercial Property Coverage Part | $ |
| TRIA | $ NOT COVERED |
| | Premium Total $ 1,000.00 |

Other Charges:
SURPLUS LINES TAX: 30.00
STAMP FEE 15.00
PLC FEE 75.00 $ 120.00

Audit Period: Annual unless otherwise stated:    **TOTAL $ 1,120.00**
PREMIUMS ARE MINIMUM & DEPOSIT AS APPLIES.
FORMS AND ENDORSEMENTS:

** SEE IL1201 A - LIST OF APPLICABLE FORMS AND ENDORSEMENTS

Inspection Ordered: ☐ Yes ☐ No ☐ Not Required  Date:    U/W Name: Marcia Nowak    Protection Class:
Photograph Ordered: ☐ Yes ☐ No ☐ Not Required

Agency Name/Address: R. N. TUSCANO AGENCY, INC., GREENSBURG PA 15601
Agency Number: 102-350

Countersigned: 07/27/2006 ___ By ___ _Robert Tuscano_ ___
Date    Authorized Representative

011-1058(11/99)

TW: 1490-3CV1215-06    HOME OFFICE



**ESSEX
INSURANCE
MARKEL COMPANY**

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
### SUPPLEMENTAL DECLARATIONS

These Supplemental Declarations form a part of policy number ____ 3CV1215

### LIMITS OF INSURANCE

| | |
|---|---|
| General Aggregate Limit (other than Products/Completed Operations) | $ 1,000,000 |
| Products/Completed Operations Aggregate Limit | $ 1,000,000 |
| Personal and Advertising Injury Limit | $ 1,000,000 |
| Each Occurrence Limit | $ 1,000,000 |
| Fire Damage Limit | $ 50,000   Any One Fire |
| Medical Expense Limit | $ EXCLUDED   Any One Reason |

### BUSINESS DESCRIPTION AND LOCATION OF PREMISES COVERED BY THIS POLICY

Form of business: CONDO COMPLEX/BLDG OWNER

☐ Individual   ☐ Joint Venture   ☐ Partnership   ☒ Organization (other than Partnership or Joint Venture)

Location of all premises you own, rent or occupy:
LOC#: 1   ROUTE 6 BEIKE HILLS PA 18473

### PREMIUM

| | Description of Hazards/ Insured Classification(s) | Code No. | | *Premium Basis | Rate Pr/Co | Rate All Other | | Advance Premium Pr/Co | Advance Premium All Other |
|---|---|---|---|---|---|---|---|---|---|
| LOC#: 1 | VACANT BUILDINGS - NOT FACTORIES (FOR PROFIT) (EXCLUDING PRODUCTS AND/OR COMPLETED OPERATIONS) | 68606 | U | 6 | 1 | $ | | $ | 500 MP |
| LOC#: 1 | APARTMENT BUILDINGS (INCLUDING PRODUCTS AND/OR COMPLETED OPERATIONS) | 60010 | U | 2 | 110 | | | | 500 MP |

*(a) Area,  (c) Total Cost,  (m) Admission,  (p) Payroll,  (s) Gross Sales,  (u) Units,  (o) Other

**TOTAL ADVANCE PREMIUM $ 1000.00**

### FORMS AND ENDORSEMENTS (other than applicable forms and endorsements shown elsewhere in the policy)

Forms and endorsements applying to this Coverage Part and made part of this policy at time of issue:

SEE IL1201A

THIS SUPPLEMENTAL DECLARATIONS AND THE COMMERCIAL LIABILITY DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS COMPLETE THE ABOVE NUMBERED POLICY.

GS23315B

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## POLICY CHANGES

POLICY CHANGE
NUMBER  A



Authorized Representative Signature

IL 1201 11 85

Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983

HOME OFFICE

CG213390

POLICY NUMBER:

COMMERCIAL GENERAL LIABILITY
CG 21 35 10 93

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - COVERAGE C - MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

Description and Location of Premises or Classification:

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule, coverage C. MEDICAL PAYMENTS (Section I) does not apply and none of the references to it in the Coverage Part apply.

The following is added to SUPPLEMENTARY PAYMENTS (Section I):

8. Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.

CG 21 35 10 93          Copyright, Insurance Services Office, Inc., 1992

 **ESSEX INSURANCE COMPANY**

## DEDUCTIBLE ENDORSEMENT

* Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CV1215 | 07/18/2006 | PARKER & PARKER INC |

**THIS ENDORSEMENT CHANGES THE POLICY.**

## SCHEDULE

| Coverage | Amount and Basis of Deductible |
|---|---|
| If provided by this policy:<br>Bodily Injury, Property Damage,<br>Professional or Personal and<br>Advertising Injury Liability | $ 500         Per Claim |
| Exception: | |
| _____ | $         Per Claim |

☐ If this box is so marked, the basis of deductible is amended to apply 'on a per item per claim' property damage deductible basis.

1. Our obligation under Bodily Injury Liability, Property Damage Liability, Professional Liability, Personal and/or Advertising Injury Liability, or any other coverage under this policy, to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above. The deductible amount stated above shall be applicable to each claim and will include loss payments, adjustment, investigative and legal fees and costs, whether or not loss payment is involved.

2. The deductible amount stated above applies under the coverages respectively to all damages sustained by one person, or organization, as the result of any one occurrence.

3. The terms of this insurance, including those with respect to:
   (a)  Our right and duty to defend any "suits" seeking those damages; and
   (b)  Your duties in the event of an "occurrence," claim, or suit apply irrespective of the application of the deductible amount.

4. We may pay any part or all of the deductible amount to effect settlement of any claim or suit and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

_____ /
AUTHORIZED REPRESENTATIVE    DATE

M/E-048 (4/99)

GS213190



# ESSEX INSURANCE COMPANY

## MINIMUM EARNED PREMIUM ENDORSEMENT

* Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3 CV1215 | 07/18/06 | PARKER & PARKER INC |

**THIS ENDORSEMENT CHANGES THE POLICY.**

If this insurance policy is canceled at your request, there will be a Minimum Earned Premium retained by us of $ _____ or  25.00  % (per cent) of the premium, whichever is the greater.  Cancellation for nonpayment of premium is considered a request by the first Named Insured for cancellation of this policy.

_____  /
AUTHORIZED REPRESENTATIVE        DATE

M/E-143 (4/99)

HOME OFFICE

GSX13190



# ESSEX INSURANCE COMPANY

## SPECIFIED /DESIGNATED PREMISES/PROJECT LIMITATION

*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMS PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3 CV1215 | 07/18/2006 | PARKER & PARKER INC |

**THIS ENDORSEMENT CHANGES THE POLICY.**

**Schedule**

**Premises:**

**Project:**

(Complete above if information different than that shown in the Declarations)

This insurance applies only to "bodily injury", "property damage", "personal injury", "advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule (or Declarations); or

2. The project shown in the Schedule (or Declarations).

_____ 07/27/2006
AUTHORIZED REPRESENTATIVE    DATE

M/E-217 [11/99]

HOME OFFICE

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - LEAD CONTAMINATION

This endorsement modifies coverage found under the following coverage part:

3 CV 1215      07/18/06      PARKER & PARKER INC
## COMMERCIAL GENERAL LIABILITY COVERAGE PART.
### Coverage A, Bodily Injury and Property Damage Liability;
### Coverage B, Personal and Advertising Injury Liability; and
### Coverage C, Medical Payments

This endorsement modifies the above Coverages to exclude occurrences at the insured premises which result in:

    a.    "Bodily Injury" arising out of the ingestion, inhalation or absorption of lead in any form;

    b.    "Property Damage" arising from any form of lead;

    c.    "Personal Injury" arising from any form of lead;

    d.    "Advertising Injury" arising from any form of lead;

    e.    "Medical Payments" arising from any form of lead;

    f.    Any loss, cost or expense arising out of any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way responding to, or assisting the effects of lead.

    g.    Any loss, cost, or expense arising out of any claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

**UD-93**

# ESSEX INSURANCE COMPANY

## COMBINATION GENERAL ENDORSEMENT

*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| | | |

THIS ENDORSEMENT AMENDS THE LIABILITY COVERAGE FORM
OR COVERAGE PART (hereinafter referred to as Coverage Form), AND APPLIES TO THE ENTIRE POLICY.

1.  Coverage under this insurance is limited to operations described under 'business description' and/or 'classification' on the declarations' pages of policy.

2.  This insurance does not apply to Part 4 of Section II in the Coverage Form – Who is an insured.

3.  Supplementary Payments-Coverages A & B - in the Coverage Form is amended to read with respect to 1. last paragraph: These payments will not reduce the limits of insurance, except with respect to attorneys' fees incurred by us in defense of an indemnitee of the insured, and this applies throughout Supplementary Payments-Coverages A & B- section of this policy.

4.  Insured contract to which this insurance applies means any written (A) - Lease of premises excluding indemnification to another for damage by fire to premises while rented to you or temporarily occupied by you and/or (B) - Easement agreement except in connection with construction or demolition operations on or adjacent to a railroad, and/or (C) - Indemnification of a municipality as required by ordinance, except in connection with work for the municipality, and/or (D) - Sidetrack agreement or any easement or license agreement in connection with vehicle or pedestrian private railroad crossing at grade, and/or (E) - elevator maintenance agreement.

5.  This insurance does not apply to claims arising out of breach of contract, whether written or oral, express or implied, implied-in-law, or implied - in fact contract.

6.  Wording in Coverage Form, 2. Exclusions, Section I- Coverages, e. Employer's Liability, is replaced by the following and applies throughout this policy:
    This insurance does not apply to liability for "Bodily Injury" to:
    (A) an "employee" of any insured arising out of and in the course of employment or while performing duties related to the conduct of an insured's business; or (B) any injury or damage to any other person including but not limited to spouse, child, parent, brother, sister or relative of the "employee" as a consequence of (A). This exclusion applies whether an insured may be liable as an employer or in any other capacity and applies to any obligation to share damages with or repay someone else who must pay damages because of the injury, as well as liability assumed under any "Insured Contract." Wherever the word "employee" appears above, it shall also mean any member, associate, co-employee, leased worker, temporary worker, union worker, volunteer, or any person or persons loaned to or volunteering services to you.

7.  Fines, penalties, and punitive or exemplary damages are not covered under this policy nor are any expenses nor any obligation to share such damages or repay another. However, this does not apply to Punitive Damages from Wrongful Death brought under Alabama's Wrongful Death Statute.

8.  Professional Liability, Errors, Omission, Negligent Acts, Malpractice and/or acts of any type including rendering or failure to render any type professional service is not covered under this policy, unless such coverage is specifically endorsed onto the policy.

9.  Wording in Coverage Form, 2. Exclusions, Section I - Coverages, c. Liquor Liability, last paragraph, is deleted. Item (4) is added as follows: (4) any act or omission by any Insured, any employee of any Insured, patrons, members, associates, volunteers or any other persons respects providing or failing to provide transportation, detaining or failing to detain any person, or any act of assuming or not assuming

ME-001 (01/06)                                                                    Page 1 of 3

responsibility for the ·    being, supervision or care of any person        jedly under or suspected to be under the influence of alcohol.

10. This insurance does not apply to 'bodily injury', 'property damage', 'personal injury, 'advertising injury' or any injury, loss, or damages, including consequential injury, loss or damage, arising out of, caused by or contributed to:

   a.    by ownership, non-ownership, maintenance, use, or entrustment to others of any 'auto', aircraft, watercraft, snowmobile, all terrain vehicle (ATV), or motorcycle.  Use includes operation and 'loading' and 'unloading'; or

   b.    from Employment- Related Practices, regardless of allegations, including but not limited to:

         (1)  refusal to employ, or termination of employment; or
         (2)  discrimination, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment in any form, humiliation, or other employment-related practices, policies, acts or omissions; or

   c.    as a result of discrimination of any kind, actual or alleged; or

   d.    as a result of and/or arising out of assault and/or battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any insured, insured's employees, patrons or any other person(s); or

   e.    as a result of alleged negligence or other wrongdoing in the hiring, training, placement, supervision, or monitoring of others by insured; or

   f.    as a result of any person practicing for and/or participating in any contest, event or function of a sporting or athletic nature; or

   g.    by any animal, regardless whether owned by you, in  your care, or on your premises; or

   h.    by any named insured covered by this policy initiating causes of action or allegations against any other insured covered by this policy; or

   i.    from intellectual property, proprietary property rights, patent, trademark and/or copyright infringement,   misappropriation of trade secret and/or  practice, piracy, fraudulent  concealment, unjust enrichment, misrepresentation or negligent  misrepresentation; and/or  deceptive, false, fraudulent, misleading, unfair, unlawful or untrue business act  or practice with respect to advertising; or

   j.    from any action or omission that violates or is alleged to violate the Telephone Consumer Protection Act (TCPA), the CAN-SPAM Act of 2003, including any amendment of or addition to such laws, or any analogous local, state or federal statute, ordinance or regulation, other than the foregoing, that prohibits or limits sending, transmitting, communicating, solicitation, or distribution of material or information using e-mails, telephone, telephone facsimile machine, computer or other electronic device; or

   k.    resulting from water or moisture, and/or due to discharge, leakage, seepage, backup or overflow from sewers, mains, drains, pipes, plumbing, heating, refrigeration, air conditioning, standpipes, appliances, sprinkler systems, or ditches, streams, levees, or rain or snow admitted to the building interior; or

   l.    from Internet exposures, world-wide web, cyber system(s), computer hardware or software, electronic data, e-mail, unauthorized use, loss/misuse of data, or from loss of, alteration of, failure, error, negligence, malfunction, inadequacy of, damage to or a reduction in functionality, availability or operation of a computer system, network(s), program(s),  software, data, information repository, microchip(s), integrated circuit or similar device in computer equipment or non-computer equipment, regardless of cause, and/or resultant loss of income, whether property of the insured or any other; or

   m.    from criminal acts, fraudulent, dishonest or malicious acts or omissions from any Insured, any employee of any insured or anyone for whom you may be held liable; or

ME-001 (01/06)                                                                                          Page 2 of 3

11. If this policy includes a Lessors Risk Only (LRO) classification, it is written and priced as such only on condition that your lease or agreement with tenant(s) requires (commercial) tenant(s) carry Commercial General Liability coverage with limits at least equal to the limits of this policy, names you as an additional Insured on their policy, and you require and secure a certificate of insurance confirming same. Parking areas or other land of premises leased to tenant(s) must also be covered by their insurance, or separately submitted and priced hereunder. Failure to comply with this condition does not void your coverage, however, limits of liability hereunder will be reduced and apply as a 'sublimit' of liability, being a Combined Single Limit, $50,000 each occurrence and in the Aggregate, including loss adjustment expenses and defense. The sublimit would be the most payable for all damages arising out of any one occurrence, and the most payable for all claims under this policy, including investigation and defense. If such sublimits were tendered or exhausted, we would not defend or continue to defend in any suit.

12. Where there is no coverage under this policy, there is no duty to defend.

# ESSEX INSURANCE COMPANY

## ADDITIONAL CONDITIONS ENDORSEMENT

*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| | | |

THIS ENDORSEMENT AMENDS THE LIABILITY COVERAGE FORM OR COVERAGE PART (hereinafter referred to as Coverage Form), AND APPLIES TO THE ENTIRE POLICY.

This insurance does not apply to 'bodily injury', 'property damage', 'personal injury, 'advertising injury' or any injury, loss, or damages, including consequential injury, loss or damage, arising out of, caused by or contributed to or as a result of:

1.

(A) 'movement of land or earth' regardless whether emanating from, aggravated by, or attributable to any operations performed by or on behalf of any insured, and regardless whether first manifestation of same occurs during the policy period or prior or subsequent thereto. 'Movement of land or earth' includes, but is not limited to, instability, subsidence, settling, sinking, slipping, falling away, caving in, shifting, eroding, rising, tilting, bulging, cracking, mud flow, mudslide, earthquake, shrinking or expansion of ground, slabs, footings, foundations, walls, roofs, floors, ceilings or any other real property or part thereof, or any other movements of land or earth; or

(B) pollution, contamination, contaminants, irritants, including but not limited to injuries alleged as a result of actual, alleged or threatened exposure to and/or absorption of and/or inhalation of, and/or ingestion of, contact with, existence of, presence of, and environmental impairment, including but not limited to damage to natural habitats and species. Expenses and any obligation to share damages with or repay anyone else who must pay damages from same in conjunction with occurrences or actions arising or alleged to have arisen out of same are not covered. All liability and expense arising out of or related to any form of actual or alleged pollution, and/or contamination, and/or environmental impairment, whether intentional or otherwise, and whether or not any resulting injury, damage, devaluation, cost or expense is expected by any insured or any other person or entity, is excluded throughout this policy. This includes but is not limited to devaluation of property, or for taking, use or acquisition or interference with the rights of others in or on property or air space.

Any loss, cost, expense, fines and/or penalties arising out of any

(a) request, demand, order, statutory or regulatory requirement, governmental authority or directive or that of any private party or citizen action that any Insured, or others, test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess same the effects of pollutants, and/or contaminants and/or irritants, and/or environmental impairment; and/or

(b) litigation or administrative procedure in which any Insured or others may be involved as a party as a result of actual, alleged, or threatened, discharge, dispersal, seepage, migration, release, escape, or placement of pollutants and/or contaminants and/or environmental impairments into or upon land, premises, buildings, the atmosphere, any water course, body of water, aquifer, or ground water, whether sudden, accidental, deliberate, or gradual in nature or not, and regardless of when,

are not covered.

Pollutants and/or contaminants and/or irritants mean any solid, liquid, gaseous, thermal, acoustic, electrical, or magnetic irritant, contaminant, or pollutant, including but not limited to smoke, fumes, heat, soot, vapor, emissions, fibers, radiation, acids, alkalis, fuels, petroleums, lubricants, operating fluids, pesticides, fertilizers, paints, dust, toxic dust, spores, chemicals and waste. Waste includes but is not limited to medical waste and all other materials to be disposed of, recycled, stored, reconditioned or reclaimed.

ME-002 (1/05)

This wording supersedes and replaces all other wording on 'Pollution' in the Coverage Form attached to this policy; or

(C) asbestos, lead, silica dust, dust and/or toxic dust, fungi, bacteria, organic pathogens, bio-organic growth and/or systemic chemical poisoning

      (a) whether arising out of actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, presence of, discharge, dispersal, seepage, migration, infiltration, infestation, release, escape, growth, production or reproduction of or toxic substances from asbestos, lead, silica dust, dust and/or toxic dust, fungi, bacteria, organic pathogens, bio-organic growth and/or systemic chemical poisoning.  This applies regardless of source, including but not limited to, from any goods, products or structures containing same, existence of same in any form, in occupancy or construction, manufacture, sale, transportation, handling, storage, disposal or removal of same; and

      (b) regardless of supervision, instructions, recommendations, requests, warnings or advice given or which should have been given, as well as any costs, including but not limited to abatement, mitigation, removal, containment, treatment, detoxification, neutralization, or disposal of same, or in any way respond to assess the effects of same.

Coverage does not apply to any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way, responding to, or assessing the effects by any insured or by any other person or entity.

"Fungi" hereunder means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.  However, this exclusion does not apply to any "fungi" or bacteria that are on, or are contained in, a good or product intended for bodily consumption.

(D) If contractors or subcontractors are used, it is a condition of coverage that you use only those that are insured, and carry at a minimum Commercial General Liability coverage with limits at least equal to the limits of this policy, name you as an additional insured on their policy, and carry workers compensation insurance, and you require and secure certificates of insurance confirming same. Failure to comply with this condition does not void your coverage, however, limits of liability hereunder will be reduced and apply as a 'sublimit' of liability, being a Combined Single Limit, $50,000 each occurrence and in the Aggregate, including loss adjustment expenses and defense.

The sublimit would be the most payable for all damages arising out of any one occurrence, and the most payable for all claims under this policy, including investigation and defense.  If such sublimits were tendered or exhausted, we would not defend or continue to defend in any suit.

Further, there is no coverage under this policy for 'bodily injury', 'personal injury' or 'property damage' sustained by any contractor, self-employed contractor, and/or subcontractor, or any employee, leased worker, temporary worker or volunteer help of same.



# ESSEX INSURANCE COMPANY

## PENNSYLVANIA ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY.**

*The following spaces "need not be completed if this endorsement and the policy have the same inception date.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
|  |  |  |

### AMENDATORY ENDORSEMENT
### REPLACING ITEM 1(B) of M/E-002 (01/05)

**Exclusion - Absolute Pollution:**

It is agreed this policy does not cover any claims arising out of:

1.  "Bodily Injury" or "Property Damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

    (a)  At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

    (b)  At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste.

    (c)  Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

    (d)  At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations;

        (1)  if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

        (2)  if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

    Subparagraphs (a) and (d) (1) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

    As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

2.  Any loss, cost or expense arising out of any:

    (a)  Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of pollutants; or

    (b)  Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

_____    _____

**AUTHORIZED REPRESENTATIVE**                **DATE**

M/E-002-PA (01/05)

# ESSEX INSURANCE COMPANY

## HABITATIONAL COMBINATION ENDORSEMENT

*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| | | |

**THIS ENDORSEMENT CHANGES THE POLICY.**

The coverage under this policy does not apply to bodily injury, property damage, personal injury, advertising injury, or any injury, loss or damage arising :

1.  out of any action(s), or allegation(s), of violation of building code(s), ordinance(s), or statute(s);

2.  out of any type eviction action(s), or allegation(s) of discrimination;

3.  if on the insured premises out of swimming pool(s), unless specifically classified and shown on declarations or schedule and
    (a)  having Red Cross or similarly qualified/certified life-guard(s) on duty at all times during hours open for use, or
    (b)  if no life-guard, 'rules signs' must be posted and clearly visible to include stating "No Life-Guard on Duty - Swim at Own Risk";
    (c)  "Rules signs" must also include: "No one under age 14 permitted without adult supervision", "No alcoholic beverages permitted", "No glass containers permitted", "No horse play permitted", as well as all other rules of management;
    (d)  life-saving equipment must be maintained poolside at all times including but not limited to floatation ring(s), shepards' hook, flotation ropes must be installed between "deep and shallow" end of pool, and depth markings must be clearly marked;
    (e)  fenced, with self-closing, self-locking gates.

M/E-091 (01/05)



# ESSEX INSURANCE COMPANY

## VACANT BUILDING ENDORSEMENT

*\* Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
|  |  |  |

### THIS ENDORSEMENT CHANGES THE POLICY.

This policy does not provide insurance coverage or defense for claims, loss, costs, and/or expenses for claims arising from any renovation, demolition, or construction operations or any owner or tenant occupancy at any building, or part of a building, classified on this policy as vacant.

**Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.**

*In Witness Whereof*, the Company has caused this endorsement to be signed by a duly authorized representative of the Company.

_____
AUTHORIZED REPRESENTATIVE

M/E-267 (01/05)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured. Other words and phrases that appear in quotation marks have special meaning. Refer to Section V –Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any ...rt. of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a.** **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b.** **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or

ternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c.** **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d.** **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e.** **Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f.** **Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or

threatened discha... ..., dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's

ehalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or

subcontracto. ...orking directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. **Aircraft, Auto Or Watercraft**
"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exc....ion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f. (2) or f. (3) of the definition of "mobile equipment".

h. **Mobile Equipment**
"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**
"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. **Damage To Property**
"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage"

arises out of any ⌐ . of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)** , **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.   Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.   Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.   Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or

da. .ous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.   Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property"; if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o.   Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.   Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an

implied . .tract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web-sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's

© ISO Properties, Inc. , 2000

c.  The cost of bonds to re.  se attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d.  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e.  All costs taxed against the insured in the "suit".

f.  Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g.  All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2.  If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a.  The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b.  This insurance applies to such liability assumed by the insured;

c.  The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d.  The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e.  The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f.  The ind   .itee:

(1)  Agrees in writing to:

(a)  Cooperate with us in the investigation, settlement or defense of the "suit";

(b)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c)  Notify any other insurer whose coverage is available to the indemnitee; and

(d)  Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2)  Provides us with written authorization to:

(a)  Obtain records and other information related to the "suit"; and

(b)  Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b. (2)** of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a.  We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b.  The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

## SECTION II – WHO IS AN INSURED

1.  If you are designated in the Declarations as:

a.  An individual, you and your spouse are insureds, but only with respect to the

conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

  **(1)** "Bodily injury" or "personal and advertising injury":

    **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

    **(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer

worker" as a consequence of Paragraph (1) (a) above;

    **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1) (a) or (b) above; or

    **(d)** Arising out of his or her providing or failing to provide professional health care services.

  **(2)** "Property damage" to property:

    **(a)** Owned, occupied or used by,

    **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture) , or any member (if you are a limited liability company) .

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

  **(1)** With respect to liability arising out of the maintenance or use of that property; and

  **(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

**a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

   No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

   The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

1. **Bankruptcy**
   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   **b.**   If a claim is made or "su.. is brought against any insured, you must:

       **(1)**   Immediately record the specifics of the claim or "suit" and the date received; and

       **(2)**   Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   **c.**   You and any other involved insured must:

       **(1)**   Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

       **(2)**   Authorize us to obtain records and other information;

       **(3)**   Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

       **(4)**   Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   **d.**   No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3.   Legal Action Against Us**

No person or organization has a right under this Coverage Part:

   **a.**   To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   **b.**   To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4.   Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover

under Cover.. .s A or B of this Coverage Part, our obligations are limited as follows:

   **a.   Primary Insurance**

   This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

   **b.   Excess Insurance**

   This insurance is excess over:

       **(1)**   Any of the other insurance, whether primary, excess, contingent or on any other basis:

           **(a)**   That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

           **(b)**   That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

           **(c)**   That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

           **(d)**   If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

       **(2)**   Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

   When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

   When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

       **(1)**   The total amount that all such other insurance would pay for the loss in

the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c.  Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5.  Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6.  Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7.  Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8.  Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9.  When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

a. The United States of A.  .ica (including its territories and possessions) , Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

c. All other parts of the world if the injury or. damage arises out of:

   (1) Goods or products made or sold by you in the territory described in a. above;

   (2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

   (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:
   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:
   a. A contract for a lease of premises.

However, .at portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including

CG 00 01 10 01                    © ISO Properties, Inc. , 2000                    **Page 13**

smoke, vapor, soot, fumes, ⌐ us, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":
    a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      (1) Products that are still in your physical possession; or

      (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

        (a) When all of the work called for in your contract has been completed.

        (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

        (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    b. Does not include "bodily injury" or "property damage" arising out of:

      (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

      (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

      (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

    a. Physica. ury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":
    a. Means:

      (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        (a) You;

        (b) Others trading under your name; or

      (c)  A person or organization whose business or assets you have acquired; and

   (2)  Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

  **b.**  Includes

   (1)  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

   (2)  The providing of or failure to provide warnings or instructions.

  **c.**  Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.**  "Your work":

  **a.**  Means:

   (1)  Work or operations performed by you or on your behalf; and

   (2)  Materials, parts or equipment furnished in connection with such work or operations.

  **b.**  Includes

   (1)  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

   (2)  The providing of or failure to provide warnings or instructions.

David C. Holland, Esq. (DH9718)
The Law Offices of Michael Kennedy PC
419 Park Avenue South – 16th Floor
New York, NY 10016
212-935-4500 Phone
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
BRUCE HELANDER

|                | Plaintiff, | 07 CV 08058 (LTS) |
|                |            | ECF FILED DOCUMENT |

**COMPLAINT/DEMAND
FOR JURY TRIAL**

-against-

RON PARKER;
PARKER AND PARKER CONSULTING

Defendants.
-------------------------------------------------------------x

Plaintiff BRUCE HELANDER, by and through his attorneys, Law Offices of

Michael Kennedy, PC, for his Complaint against Defendants RON PARKER and PARKER

AND PARKER CONSULTING alleges as follows:

1. This an action for defamation under the laws of the State of New York.

## JURISDICTION AND VENUE

2. This is an action arising under the laws of the State of New York. This Court has

jurisdiction over the subject matter of this action under 28 U.S.C. § 1332, there being diversity of

citizenship between plaintiff and defendants and the amount in controversy exceeding $75,000.

Venue is proper in this District under 28 U.S.C. § 1391(a).

1

## PARTIES

3.  BRUCE HELANDER (hereinafter "HELANDER") is domiciled in West Palm Beach, Florida and is a nationally recognized and respected designer and collagist, as well as published author and art curator. His work is represented in over 50 museums, including the Whitney, Metropolitan and Guggenheim Museum in New York State. His work appears in "The New Yorker" magazine and other publications. He has received multiple awards for professional recognition in the art world and is the former provost of the prestigious Rhode Island School of Design.

4.  Upon information and belief, defendant RON PARKER (hereinafter "PARKER") is an individual domiciled in the State of Pennsylvania.

5.  Upon information and belief, Defendant PARKER AND PARKER CONSULTING is a corporation organized and existing under the laws of the State of New York with its principal place of business in New York, New York.

6.  Upon information and belief, PARKER is the principal and owner of PARKER AND PARKER CONSULTING and is engaged in the business of art consulting. At all times herein, PARKER was acting individually and on behalf of PARKER AND PARKER CONSULTING.

## BACKGROUND

7.  HELANDER and PARKER became acquainted in or about 1995 and have had a casual personal and professional relationship, off and on, for approximately 12 years.

8.  On or about February 27, 2007, PARKER individually and on behalf of PARKER AND PARKER CONSULTING maliciously wrote an email entitled "stupidity" (hereinafter "the email"), attached hereto as Exhibit A. The email was addressed to HELANDER and copied to Don Binns, Plaintiff's then employer, who is the owner of International Artists Guild and Fine

2

Arts Publishing (hereinafter "IAG"), and headquartered in Naples, Florida and conducting business throughout the United States.

9. On or about October 2006, prior to publication of the email, HELANDER and Binns entered into a five year agreement whereby HELANDER would become the managing partner of IAG at an annual rate of $120,000.00 per year plus commissions. Binns also agreed to sell HELANDER'S work in his galleries and other venues, including New York City.

10. On or about November 2006, HELANDER began full time compensated employment for IAG. HELANDER hired a staff and gallery director, created an advertising campaign and exhibition calendar as well as marketing plans for Los Angeles, San Francisco, Naples and Palm Beach, Florida, New York City, and Dubai (UAE). HELANDER began writing published essays on IAG artists and related activities and presented a plan of exhibitions for the following season and into the future. He continued to oversee quality control, exhibition installations, recommend new artists and limited edition print production programs.

11. On or about December 2006, Defendants, an art consultant and art consulting company well known and influential in the art world, suggested to HELANDER to consider expanding the IAG and to acquire Simic Galleries, which had various locations in southern California and Arizona. Defendants were to receive a commission if IAG acquired Simic. HELANDER traveled to La Jolla, California, met with Mario Simic, the CEO of Simic Galleries and toured his facilities. He also traveled to meet Simic's associate, Rami, at their Palm Desert location.

12. On or about January, 2007, HELANDER arranged and curated several exhibitions in California, Florida, New York City and Dubai for IAG Galleries.

3

13.   On or about February, 2007 HELANDER received an email from Simic associate Rami suggesting a dinner meeting in New York on March 1, 2007 to coincide with Art Expo, an international art exposition.

14.   On or about February, 2007, PARKER sent an email to HELANDER demanding that HELANDER and Binns confirm the meeting with Simic and Rami in New York.  Fearing the loss of his commission, PARKER threatened, that "if you don't make this happen the loss will be yours."  HELANDER promptly replied to PARKER informing him that the suggested date could not be confirmed because Binns might not be in New York for Art Expo.

15.   Thereafter, on February 27, 2007, PARKER maliciously wrote HELANDER the email entitled "stupidity" (Exhibit A herein) and copied Binns on the email.

16.   In the email, PARKER falsely accused HELANDER of, *inter alia*, being a "lying, irresponsible bastard," "commit[ing] perjury before the courts . . .", "steal[ing] money . . .", and "40 years of daily pot smoking."  In the email, PARKER further suggested that Binns would terminate HELANDER and cites numerous examples of unsubstantiated professional incompetence.  These allegations are false and defamatory.

17.   On or about March, 2007 and continuing through the present, HELANDER has received medical treatment and prescribed medication for anxiety, depression and insomnia as a result of the stress created by PARKER'S email and the feared and suspected potential loss of HELANDER's job.

18.   On or about April 5, 2007, HELANDER, normally a healthy adult, was diagnosed with Bell's Palsy as a result of stress.

19.   After Binns received a copy of Parker's email, Binns expressed to Helander his deep disturbance with Parker's allegations and raised doubts about HELANDER'S future with Binns.

4

20.  On or about April 18, 2007, HELANDER sent an email to Binns expressing concern about his continued employment with IAG as a result of PARKER'S email, and asked Binns to consider the value of HELANDER'S contributions to IAG.  HELANDER asked Binns to come to a final decision so that HELANDER could know where he stood with respect to his employment.

21.  On or about April 22, 2007, Binns requested a meeting with HELANDER and handed him a letter of termination.  In the letter, Binns stated that his reason for terminating HELANDER was the allegations in PARKER's email.

### AS AND FOR A FIRST CAUSE OF ACTION
#### (Defamation/Slander/Libel)

22.  Plaintiff realleges paragraphs 1 through 21 as if fully set forth herein.

23.  The email written by PARKER was defamatory in that it exposed HELANDER to public ridicule, contempt and disgrace and lack of credibility for future consulting projects and employment in the art world and related work.

24.  The email written by PARKER specifically, and without any factual basis, clearly referred to HELANDER as a liar, an incompetent arts administrator with a deliberately fabricated history of professional failures, serious financial losses and lawsuits against him by previous partners, and also accused him as a thief and illegal drug user.

25.  The email by PARKER was written maliciously and was deliberately copied to Binns.

26.  The email was the direct cause leading to the termination of HELANDER's employment with Binns, thereby causing HELANDER to suffer damage to his personal and professional reputation, present and future financial loss, as well as serious physical and mental injuries.

5

WHEREFORE, Plaintiff demands that judgment be awarded in his favor against Defendant in a sum that exceeds the jurisdictional minimum of this Court, together with the costs and disbursements of this action and a reasonable award of attorneys fees.

Dated: New York, NY
      September 13, 2007

Respectfully Submitted,

David C. Holland, Esq. (DH9718)
The Law Offices Of Michael Kennedy, P.C.
419 Park Avenue South, 16th floor
New York, NY 10016
212-935-4500 Phone
212-980-6881 Fax

Exhibit A

BellSouth - Web E-mail          Case 1:07-cv-08058-LTS-DFE    Document 12    Filed 09/11/2007    Page 1 of 2
http://webmail.bellsouth.net/cgi-bin/gx.cgi/AppLogic+mobmain?



**⊙ BELLSOUTH**

## WEB E-MAIL

⌂ Home  ✉ E-mail  ⛉ E-Greetings  ⛉ Help & Technical Support                    En Español ►

Search  The Web                                    [GO] More        Powered by Go gle

You are currently signed in - Logout

| Compose New Message | Reply | Reply All | Forward | Move To ¹(Choose Folder) | ✗ Delete | ✦ Next | ◄ Back | Print |

**Folders**

Inbox

Sent Mail

Drafts

Trash

Create/Edit Folders

**Options**

Address Book
POP Mail
Manage SPAM
Preferences
E-Mail Help

See Your Credit Score  $0

Comparison shop with
BellSouth & save money

Try BellSouth Webtunes
today

Get a FREE Multi-Room
DIRECTV® System

From:  RON PARKER <rkparker@ptd.net> Add to Address Book
Date:  2007/02/27 Tue PM 09:03:56 EST
To:    "Bruce balender" <brucebalender@bellsouth.net>
CC:    <dbnna@aol.com> Add to Address Book
Subject: stupidity

Bruce, what a stupid email to send Mario.
If Don does not want me at a meeting, you should tell me and I will not be there.  In fact, I am
now not going to ny.
What you have demonstrated is that your poisoning Don re Ron was so negative and your
attempts to neutralize it were so pathetic, that you are, again, another failure in trying to structure
a deal to get you out of your self imposed crisis.  Since I never told Mario of our conflict, in order
to protect you, I will  now be free to tell Mario and anyone else what a lying, irresponsible bastard
you are
Don and his two  artists are doomed as anyone can see   Your only hope was to create
something  bigger and better quickly.  Or perhaps to milk
Don as long as possible   Don should ask Paul Fisher what his DC sales have been each of the
last five years  He is third rate in the sales department.
All of your acting so 'busy' working is a joke. You would not know a priority if it bit you in the
butt...  why don't we run off to Dubai and waste some time and money, how about a Playboy
party to network; better still, let's get some Robb Report and Banking clients together.. or how
about this   ..let's have a party for Tippy!!
Your history is about smoke and mirrors...not substance.  Stop running around in circles,
stop rearranging the deck chairs on the Titanic, and knock on some fucking gallery doors and
make a sale!!!
You will fail at art expo, you will fail in making significant sales and Don will terminate you.
You don't know the commercial art business, you don't have any personal contacts with the
players and you don't have any valid art to sell them.
You did not know  what the fuck you were doing in the silk mill condo conversion, you pissed
your money away, and then you blame me for your stupid decisions  Your last stupid acts are to
commit perjury before the courts of PA, to steal money from your 'friend'  Milo, to not pay your
hourly worker, your architect, your engineer and your contractor. You the big, ego developer
who did not know his ass from his elbow and now you want to blame me for your failures and to
make me the evil one.  Don is not stupid;  if he saw all  of the contracts, amendments and  paper
trail, he would know who the bull shitter and lying evil person is----you not me.
Take responsibility for your life.  Get focused.   You are running around wasting time and
Don's money.  I think 40 years of daily pot smoking has ruined most of your gray matter          I
simply cannot believe how a guy as nice as you are in person could be so irresponsible with
your (and Don's) time and money.  Did you ever figure out why the Armory fired you?  Why you
really have never made any serious money in your life?  Why your gallery investor had to sue
you?  Why your investors lost $11,000,000 on your magazine, ArtExpress?
Your behavior toward me and you mismanagement of the silk mill project is pathetic
More pathetic, however, is that I alone gave you an opportunity with Mario  and Rami to launch
you and Don into the real art business by buying a profitable art company....and you even screw
that up. ...  self destructive ? or incompetent ?
Tell the truth for a change and maybe you have a future if you   can focus and sell rather
waste your time and Don's money doing that dumb Palm Beach p r  stuff which does not result
in sales.
Oh, and also take responsibility for your decisions........neither the devil nor Ron made
you do anything   You are 60 years old and you made all of the decisions that caused you to

repeatedly screw up your life

Ron

**Reply**    **Reply All**    **Forward**    Move To    (Choose Folder)    ⊿ **Delete**    ⇲ **Next**    ⊿ **Back**    **Print**

**Need help with your e-mail?** **View solutions to common issues.**

BellSouth | Advertising | Help | Service Agreement | Legal Notices | Privacy Policy | Contact Us
Copyright 2004 BellSouth Corp. All Rights Reserved



**Clausen Miller** PC

Attorneys at Law

| CLAUSEN MILLER P.C. | CLAUSEN MILLER L.L.P. | CLAUSEN MILLER EUROPE |
|---|---|---|
| CHICAGO, IL | LONDON, ENGLAND | Clausen Miller P.C. |
| IRVINE, CA | | Clausen Miller L.L.P., LONDON |
| NEW YORK, NY | | Tetard-Lambard-Jami & Associés, PARIS |
| PARSIPPANY, NJ | | Studio Legale Corapi, ROME |
| WHEATON, IL | | van Cutsem-Wittamer-Marnef & Partners, BRUSSELS |
| SHANGHAI, CHINA | | |

One Chase Manhattan Plaza, 39th Floor • New York, NY 10005 • www.clausen.com

Tel: 212.805.3900 • Fax: 212.805.3939

Steven J. Fried, Esq.
Direct Line:    212-805-3920
E-Mail:    sfried@clausen.com

November 28, 2007

**CERTIFIED MAIL/**
**RETURN RECEIPT REQUESTED AND FEDEX**
Parker & Parker, Inc.
90 Ninth Street
Milford, PA 18337

|       |                                                              |
|-------|--------------------------------------------------------------|
| Re:   | *Helander c. Ron Parker and Parker and Parker Consulting*    |
|       | Claim No.:    C014304RS                                       |
|       | Insured:    Parker & Parker Inc.                             |
|       | Claimant:    Bruce Helander                                   |

Dear Sirs:

We are coverage counsel to Essex Insurance Company ("Essex") and are writing on its behalf to advise that Essex was recently notified about a letter from Henry R. Kaufman, P.C., counsel representing Ron Parker and Parker and Parker Consulting, addressed to Rodger-Over- Polley, Inc., requesting that they forward his "Notice of Claim" to Essex regarding a lawsuit styled <u>Bruce Helander v. Ron Parker and Parker Consulting</u>, filed in the United States District Court, Southern District of New York (the "Helander Lawsuit").

The Helander Lawsuit alleges that on February 27, 2007, Ron Parker, individually, and on behalf of Parker and Parker Consulting, an art consulting business incorporated in New York, wrote a malicious email to Mr. Helander, copied to Helander's employer Don Binns, accusing Helander of lying, irresponsibility, stealing money, and smoking pot, among other things. The Helander Lawsuit alleges "defamation/ slander/ libel", that the email was defamatory, was written without any factual basis, was written maliciously and was deliberately copied to Binns. The Helander Lawsuit alleges that Mr. Helander suffered termination of his employment, damage to his reputation, present and future financial losses, and physical and mental injuries as a result of the email.

Essex issued policy number 3CV1215 to Parker & Parker, Inc. of 90 Ninth Street, Milford, PA 18337 for the period July 18, 2006 to July 18, 2007 (the "Policy"). The "Business Description" listed on the Policy is "Condo Complex/ Building Owner".

231385.1

*Clausen*
*Miller.*

Parker & Parker, Inc.
November 28, 2007
Page 2

We regret to inform you that there is no coverage under the Policy for the claims against Ron Parker and Parker and Parker Consulting in the Helander Lawsuit.  Parker and Parker Consulting is not a named insured or an additional insured under the Policy and Ron parker is not insured under the Policy as an individual or, as alleged in the Helander Lawsuit, as somebody acting on behalf of Parker and Parker Consulting.

We want to advise you that even if the Helander Lawsuit had named Parker and Parker, Inc. as a defendant, there would be no coverage under the Policy for the Helander Lawsuit because the Policy only covers Parker & Parker Inc. as a "condo complex/ building owner" and not for emails relating to Mr. Helander's alleged incompetence as an art consultant and/or his losing his job or suffering physical ailments as the result of an email.

We direct your attention to paragraph 1 of Combination General Endorsement ME-001 (01/06), stating, in relevant part:

> THIS ENDORSEMENT AMENDS THE LIABILITY COVERAGE FORM OR COVERAGE PART (hereinafter referred to as Coverage Form), AND APPLIES TO THE ENTIRE POLICY.
>
> 1.      Coverage under this insurance is limited to operations described under "business description" and/or "classification" on the declarations page of the Policy.
>
> The "Business Description" on the Declarations Page is:  Condo Complex/ Building Owner
>
> The Classification(s) are: Vacant Buildings - Not Factories;  Apartment Buildings.

Therefore, even if Parker and Parker, Inc. had been named as a defendant in the Helander Lawsuit, there would be no coverage under the Policy for Parker and Parker Inc. for the Helander Lawsuit because coverage is limited to operations of a condo complex/ building owner in Pennsylvania, and does not cover allegedly malicious emails relating to Mr. Helander's incompetence as an arts professional and to Mr. Helander allegedly losing his job in the arts field because of the email or to alleged physical and mental injuries he suffered because of the email.

Still further, even if Parker and Parker Inc. had been named as a defendant in the Helander Lawsuit, there would be no coverage under the Policy because of the Specified/ Designated Premises Project Limitation Endorsement, stating, in relevant part:

> This insurance applies only to "bodily injury", "property damage", "personal injury", "advertising injury", and medical expenses arising out of:

231385.1



Parker & Parker, Inc.
November 28, 2007
Page 3

    1.     The ownership, maintenance or use of the premises shown in the Schedule (or Declarations); or

    2.     The project shown in the Schedule (or Declarations).

    The Declarations lists one building: Route 6, White Mills, PA 18473

The Helander Lawsuit arises out of an email that is alleged to have been maliciously sent, slandering Mr. Helander, calling him a liar, incompetent and a pot smoker and implying he is incompetent as an arts professional, causing him to lose his job and to suffer financial loss and physical injuries. The lawsuit does not have any connection to the ownership, maintenance, or use of the building at Route 6, White Mills, PA 18473.

Still further, even if Parker and Parker Inc. had been named as a defendant in the Helander Lawsuit, there would be no coverage under the Policy for the Helander Lawsuit because Combination General Endorsement ME-001 (01/06), specifically excludes coverage, as follows:

    10.    This insurance does not apply to "bodily injury", "property damage", "personal injury", "advertising injury", or any injury, loss or damages, including consequential injury, loss or damages, arising out of, caused by or contributed to:

    i.     from...... misrepresentation or negligent misrepresentation.....,

    1.     from internet exposures, worldwide web, cyber systems, computer hardware or software, electronics data, email,

    m.    from criminal acts, fraudulent, dishonest or malicious acts or omissions from any insured....

The Helander Lawsuit arises out of an allegedly malicious email sent by Mr. Parker to Mr. Helander in which Mr. Parker allegedly misrepresents Mr. Helander. Therefore, even if Parker and Parker Inc. had been named as a defendant in the Helander Lawsuit, there would be no coverage under the Policy because the Policy specifically excludes losses or damages arising out of misrepresentation, email, and/or malicious acts.

There would also be no coverage for Parker and Parker Inc. for the Helander Lawsuit because all of the claims in the lawsuit are only potentially covered under Coverage B of the Policy (since Coverage A only covers "bodily injury" or "property damage" caused by an occurrence, defined in the Policy as an "accident") and Exclusion 2b in Coverage Section B states:

231385.1

*Clausen*
*Miller*

Parker & Parker, Inc.
November 28, 2007
Page 4

    2.     Exclusions.

        This insurance does not apply to:

            b.     Material Published with knowledge of falsity.

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

"Personal and advertising injury" is defined as:

    15.    "Personal and adversting injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

        a.     False arrest, detention or imprisonment;

        b.     Malicious prosecution;

        c.     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

        d.     Oral or written publication, in any manner of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

        e.     Oral or written publication, in any manner, of material that violates a person's right of privacy;

        f.     The use of another's advertising idea in your "advertisement", or

        g.     Infringing upon another's copyright, trade dress or slogan in your "advertisement"

The entire Helander Lawsuit arises out of an allegedly false email that was written maliciously, causing Mr. Helander financial and physical injuries and would, therefore, not be covered.



*Clausen Miller*

Parker & Parker, Inc.
November 28, 2007
Page 5

For all of the reasons stated above, Essex Insurance Company disclaims coverage to Ron Parker and Parker and Parker Consulting for the Helander Lawsuit. Essex Insurance Company will not defend or indemnify Ron Parker or Parker and Parker Consulting for the Helander Lawsuit.

This disclaimer in no way constitutes, nor should it be considered, a relinquishment by Essex Insurance Company of any and all other defenses available to it under the terms and conditions of the insurance contract and neither anything in this letter, nor any act of Essex Insurance Company, is to be considered as a waiver of any known or unknown defenses. Essex Insurance Company reserves the right to rely upon additional defenses that may become known. If at any time you acquire additional information that may affect our or Essex Insurance Company's determination pertaining to this disclaimer, including suit papers, if received, please contact us or Essex Insurance Company immediately, as failure to do so may affect your rights under your insurance contract.

Please feel free to contact us with questions.

Very truly yours,

CLAUSEN MILLER P.C.

By:

Steven J. Fried, Esq.

SJF:je

cc:    Rick Strickler
       Essex Insurance Company
       P.O. Box 2010
       Glen Allen, VA 23058-2010

       W.N. Tuscano Agency, Inc.
       Greensberg, PA 15601

       Rodgers-Oliver- Polkey, Inc.
       918 Church Street
       Honesdale, PA 18431

       **CERTIFIED MAIL/RETURN RECEIPT**
       **REQUESTED AND FEDEX**
       Henry R. Kaufman, P.C.
       Counsel for Ron Parker
       and for Parker and Parker Consulting

231385.1

*Clausen*
*Miller.*

Parker & Parker, Inc.
November 28, 2007
Page 6

111 East 44th Street
Suite 900
New York, NY 10007

231385.1





*Clausen Miller P.C.*    *Clausen Miller L.L.P.*    *Clausen Miller Europe*
CHICAGO, IL              LONDON, ENGLAND         Clausen Miller P.C.
IRVINE, CA                                       Clausen Miller L.L.P. LONDON
NEW YORK, NY                                     Tessard-Lambard Jumi & Associés, PARIS
PARSIPPANY, NJ                                   Studio Legale Corapi, ROME
WHEATON, IL                                      van Cutsem-Wittamer-Marnef & Partners, BRUSSELS
SHANGHAI, CHINA

*Attorneys at Law*        One Chase Manhattan Plaza, 39th Floor • New York, NY 10005 • www.clausen.com
                                           Tel: 212.805.3900 • Fax: 212.805.3939

Steven J. Fried, Esq.
Direct Line:    212-805-3920
E-Mail:         sfried@clausen.com

March 20, 2008

**VIA FACSIMILE AND FEDERAL EXPRESS**
Mr. Henry Kaufman, Esq.
Henry R. Kaufman, P.C.
111 East 44th Street, Suite 900
New York, NY 10017

Re:    *Helander v. Ron Parker and Parker & Parker Consulting*
       Claim No.:        C014304RS
       Insured:          Parker & Parker Inc.
       Claimant:         Bruce Helander

Dear Mr. Kaufman:

As discussed in our telephone conversation of March 17, 2008, we write regarding Essex Insurance Company's ("Essex") November 28, 2007 coverage position letter to its insured, Parker & Parker, Inc. ("Parker & Parker"), related to the lawsuit involving claimant Bruce Helander. Subject to your assertions on behalf of Parker & Parker, Inc., Essex has reconsidered its disclaimer letter of November 28, 2007, and will agree to defend Parker & Parker, Inc. under its Policy subject to a reservation of rights to disclaim coverage. We explain in further detail below the reasons for Essex's coverage position.

This matter arises from an allegedly false and malicious e-mail sent by Ron Parker to Bruce Helander and Don Binns on February 27, 2007. As a result of the e-mail, Mr. Helander filed a lawsuit in the United States District Court, Southern District of New York, styled *Bruce Helander v. Ron Parker and Parker and Parker Consulting* (the "Helander Lawsuit"). The complaint in the Helander Lawsuit generally alleges that Mr. Helander's injuries were caused by Mr. Parker's February 27, 2007 e-mail to Mr. Helander, which was copied to Mr. Helander's employer Don Binns, accusing Mr. Helander of lying, irresponsibility, stealing money, and smoking pot, among other things. The Helander Lawsuit alleges that the e-mail was defamatory, written without any factual basis, written maliciously, and deliberately copied to Mr. Binns. The Helander Lawsuit further alleges that Mr. Helander suffered termination of his employment, damage to his reputation, present and future financial losses, and physical and mental injuries as a result of the e-mail.

237885.1

*Clausen*
*Miller.*

Mr. Kaufman
March 20, 2008
Page 2 of 9

### The Essex Policy

Essex issued policy number 3CV1215 to Parker & Parker, Inc. of 90 Ninth Street, Milford, PA 18337, effective from July 18, 2006 to July 18, 2007, with policy limits of one million dollars for each occurrence and one million dollars in the general aggregate (the "Policy"). We refer you to the following relevant provisions of the Policy.

#### COMBINATION GENERAL ENDORSEMENT ME-001 (01/06)

THIS ENDORSEMENT AMENDS THE LIABILITY COVERAGE FORM OR COVERAGE PART (hereinafter referred to as Coverage Form), AND APPLIES TO THE ENTIRE POLICY.

1.    Coverage under this insurance is limited to operations described under "business description" and/or "classification" on the declarations page of the Policy.

\*\*\*

#### COMMERCIAL GENERAL LIABILITY COVERAGE PART SUPPLEMENTAL DECLARATIONS

BUSINESS DESCRIPTION AND LOCATION OF PREMISES COVERED BY THIS POLICY

Form of business:    CONDO/COMPLEX/BLDG OWNER

\*\*\*

The Supplemental Declarations further stated that the Insured Classification(s) are:

Vacant Buildings - Not Factories;  Apartment Buildings.

\*\*\*

#### SPECIFIED/ DESIGNATED PREMISES/ PROJECT LIMITATION

This insurance applies only to "bodily injury", "property damage", "personal injury", "advertising injury", and medical expenses arising out of:

1.    The ownership, maintenance or use of the premises shown in the Schedule (or Declarations); or

237885.1

*Clausen*
*Miller*

Mr. Kaufman
March 20, 2008
Page 3 of 9

2.    The project shown in the Schedule (or Declarations).

\*\*\*

The Declarations lists one building:

LOC# 1        Route 6 White Mills PA 18473

\*\*\*

## COMBINATION GENERAL ENDORSEMENT ME-001
## (01/06)

10.    This insurance does not apply to "bodily injury", "property
damage", "personal injury", "advertising injury", or any
injury, loss or damages, including consequential injury, loss
or damages, arising out of, caused by or contributed to:

i.    from...... misrepresentation or negligent
misrepresentation.....,

l.    from internet exposures, worldwide web, cyber systems,
computer hardware or software, electronics data, email,

m.    from criminal acts, fraudulent, dishonest or malicious acts
or omissions from any insured.....

\*\*\*

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY
## DAMAGE LIABILITY

1.    **Insuring Agreement**

a.    We will pay those sums that the insured becomes
legally obligated to pay as damages because of
"bodily injury" or "property damage" to which this
insurance applies. We will have the right and duty
to defend the insured against any "suit" seeking
those damages. However, we will have no duty to
defend the insured against any "suit" seeking
damages for "bodily injury" or "property damage"

*Clausen*
*Miller*

Mr. Kaufman
March 20, 2008
Page 4 of 9

to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or service is covered unless explicitly provided for under Supplementary Payments - Coverages A or B.

*** 

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

   (1) The amount we will pay for damages is limited as describe in Section III -- Limits Of Insurance; and

   (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the

*Clausen*
*Miller.*

Mr. Kaufman
March 20, 2008
Page 5 of 9

payment of judgments or settlements under
Coverages A or B or medical expenses under
Coverage C.

No other obligation or liability to pay sums or perform acts
or services is covered unless explicitly provided for under
Supplementary Payments - Coverages **A** and **B**.

2.    **Exclusions**

This insurance does not apply to:

b.    **Material Published With Knowledge Of Falsity.**

"Personal and advertising injury" arising out of oral or
written publication of material, if done by or at the
direction of the insured with knowledge of its falsity.

\*\*\*

"Personal and advertising injury" is defined as:

## SECTION V - DEFINITIONS

\*\*\*

15.    "Personal and Adverting injury" means injury,
including consequential "bodily injury", arising out
of one or more of the following offenses:

a.    False arrest, detention or imprisonment;

b.    Malicious prosecution;

c.    The wrongful eviction from, wrongful entry
into, or invasion of the right of private
occupancy of a room, dwelling or premises
that a person occupies, committed by or on
behalf of its owner, landlord or lessor;

d.    Oral or written publication, in any manner of
material that slanders or libels a person or
organization or disparages a person's or
organization's goods, products or services;

*Clausen*
*Miller.*

Mr. Kaufman
March 20, 2008
Page 6 of 9

e.    Oral or written publication, in any manner, of material that violates a person's right of privacy;

f.    The use of another's advertising idea in your "advertisement", or

g.    Infringing upon another's copyright, trade dress or slogan in your "advertisement"

***

**4.    Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a.    Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b.    Excess Insurance**

This insurance is excess over:

***

(2)    Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverage **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's right against all those other insurers.

***

*Clausen*
*Miller*

Mr. Kaufman
March 20, 2008
Page 9 of 9

cc:       Rick Strickler
          Essex Insurance Company
          P.O. Box 2010
          Glen Allen, VA 23058-2010

          W.N. Tuscano Agency, Inc.
          Greensberg, PA 15601

          Rodgers-Oliver- Polkey, Inc.
          918 Church Street
          Honesdale, PA 18431

          Parker & Parker, Inc.
          90 Ninth Street
          Milford, PA 18337